# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| EVANS STURDIVANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 04-1135-T-An |
| | ) | |
| PICTSWEET FROZEN FOODS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S OBJECTIONS TO EXHIBITS

Plaintiff has filed this employment discrimination complaint under Title VII, 42 U.S.C. § 2000e-5, against his former employer, Pictsweet Frozen Foods.[1] Plaintiff contends that he was terminated from his employment in retaliation for having filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Defendant has filed a motion for summary judgment, and Plaintiff has responded to the motion. Defendant has filed a reply to the response. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED. Defendant has also filed objections to Plaintiff's list of exhibits. Because Defendant's objections are meritorious, the court will not consider the exhibits at issue.

---

[1] Defendant's correct name is The Pictsweet Company.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on _08-29-05_

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. To prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the nonmovant's case." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The moving party may support the motion with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Anderson, 477 U.S. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street, 886 F.2d at 1479 (quoting Anderson, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

The facts of this case are as follows.[2]  Plaintiff was hired by Defendant in 1999.  He transferred to Defendant's facility in Brownsville, Tennessee, in 2001.[3]  In March 2003, Plaintiff filed a charge with the EEOC, alleging that he was not being considered for promotions because of his race.  Plaintiff later withdrew his charge.  Plaintiff subsequently filed a second EEOC charge, claiming that a written reprimand that he received on May 28, 2003, for excessive absenteeism, was in retaliation for filing his first EEOC charge.  Plaintiff was issued a "no cause determination/notice of right to sue" on January 27, 2004, but did not file suit.

Defendant instituted additional written guidelines for its attendance policy on June 16, 2003.[4]  The policy provided for different point levels to be allocated for absences, tardiness, leaving early, and failing to call in timely.  The policy also provided for a graduated disciplinary system, whereby an employee would be given a verbal notification, then a written warning, and then a final warning, as points were accumulated.  An employee who accumulated ten points would be subject to termination.  Points expired upon their one year anniversary.  Two points would be deducted if an employee had perfect attendance for three months.

All employees, including Plaintiff, acknowledged in writing that they had been made

---

[2] The facts are stated for the purpose of deciding this motion only.

[3] Plaintiff had previously worked for Defendant from 1990 until 1994, when he voluntarily resigned.

[4] Between January 1and May 28, 2003, Plaintiff had eight full day absences and five tardies.  The court has not considered these absences and tardies in reaching its decision because they occurred prior to the implementation of the new policy.

aware of the policy.  Each employee started with a "clean slate" on June 16, 2003.  Paul

Williams, Defendant's human resources manager, was responsible for administering points

to employees who violated the policy.

Plaintiff received the following points which are not in dispute, unless indicated

otherwise:

| | | |
|---|---|---|
| June 18, 2003 | ½ point | tardiness[5] |
| July 9, 2003 | ½ point | tardiness |
| July 10, 2003 | ½ point | tardiness |
| July 15, 2003 | ½ point | tardiness |
| July 17, 2003 | ½ point | tardiness |
| July 31, 2003 | ½ point | leaving early |
| August 7, 2003 | ½ point | tardiness over three hours[6] |
| August 9, 2003 | ½ point | tardiness |
| August 18, 2003 | ½ point | tardiness over two hours[7] |
| August 23, 2003 | ½ point | returning late from lunch |
| September 6, 2003 | ½ point | tardiness[8] |

---

[5] One point was deducted for tardiness two hours or more; one half point was deducted for tardiness less than two hours.

[6] Defendant contends that, under the policy, Plaintiff should have received one point but was mistakenly debited one half point.

[7] Defendant contends that, under the policy, Plaintiff should have received one point but was mistakenly debited one half point..

[8] At this point, Plaintiff received a verbal warning for having accumulated 5.5 points.

4

| September 8, 2003 | ½ point | leaving early |
| **September 9, 2003** | **½ point** | **leaving early (disputed)**[9] |
| September 10, 2003 | 1 point | working less than a 4 hour shift[10] |
| September 18, 2003 | ½ point | tardiness[11] |
| September 22, 2003 | ½ point | tardiness |
| **October 11, 2003** | **½ point** | **leaving early (disputed)**[12] |
| December 27, 2003 | 1 point | absent |

Defendant contends that Plaintiff was subject to termination as of December 27th because he had accumulated a total of ten points. Defendant also contends that Plaintiff accumulated another three points on December 28, 2003, for failing to call in his absence, and one and one half points on December 29, 2003, for failing to report or call in within one hour prior to the start of the shift. Plaintiff was terminated effective December 30, 2003.

Prior to his termination, Plaintiff was inadvertently charged with one half point on two occasions. On August 16, 2003, Plaintiff was given permission to leave early to visit his hospitalized mother. The one half point was removed when Plaintiff brought the error

---

[9] Employees had permission to attend the funeral of a co-worker. Employees who attended the funeral were not charged with one half point. Defendant contends that Plaintiff did not attend the funeral, while Plaintiff contends that he did.

[10] At this point, Plaintiff received a written warning for having accumulated 6.5 points.

[11] Plaintiff received a final written warning for having accumulated 8.0 points. The warning is dated September 24, 2003.

[12] Plaintiff disputes this one half point. Plaintiff contends that Thompson told him that he could leave early without accruing any points.

to Williams' attention. On August 30, 2003, several employees, including Plaintiff, who had been given permission to leave early were charged with one half point. The one half point was removed when this was brought to the attention of the facility superintendent, Doug Thompson.

Because the policy provided that two points would be removed for three months' perfect attendance, Plaintiff would have had two points removed before December 27 if he had not been charged with the October 11th one half point. Thus, without the disputed one half points that were assessed to Plaintiff on September 9, 2003, and October 11, 2003, he would have accumulated seven, instead of ten, points by December 27 and would not have been subject to termination on that date.

As for the points awarded on December 28 and December 29, Plaintiff contends that his girlfriend was told, when she called in on Plaintiff's behalf, that he would not have to call in until he was ready to return to work. Plaintiff asserts that he believed that this meant that he would be assigned only one point per day for a called in absence, rather than three points for an uncalled in absence. Using Plaintiff's calculations, by December 29, when he was ready to return to work, he should have had a total of nine points.

The framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) is applicable to claims of retaliatory discharge. Prince v. Commissioner, U.S.I.N.S., 713 F. Supp. 984, 996 (E.D. Mich. 1989), citing McKenna v. Weinberger, 729 F.2d 783 (D.C. Cir. 1984). To establish a prima facie case of retaliation, the plaintiff must show: (1)

6

that the employer knew that the plaintiff had engaged in a statutorily protected activity; (2)

that the employer took an adverse personnel action; and (3) that a causal connection existed

between the two. <u>Prince</u>, 713 F. Supp. at 996. If the plaintiff establishes a prima facie case,

the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory

reason for its actions. <u>Canitia v. Yellow Freight System, Inc.</u>, 903 F.2d 1064, 1066 (6th Cir.

1990). The plaintiff, who bears the burden of persuasion throughout the entire process, then

must demonstrate "that the proffered reason was not the true reason for the employment

decision." <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).

Defendant acknowledges that Plaintiff engaged in a statutorily protected activity and

that he suffered an adverse personnel action when he was terminated. Defendant argues,

however, that Plaintiff cannot show a causal connection between the two. That is, Plaintiff

cannot show that he received the disputed points which led to his termination <u>because</u> he

filed EEOC charges. To establish a causal connection, Plaintiff relies on (1) the proximity

between his filing the EEOC charges and receiving the disputed points and (2) records

which purport to show that the policy was applied in a discriminatory manner.

The requisite causal connection may be shown by the close proximity in time between

the protected activity and the allegedly retaliatory action. <u>See</u> <u>Burrus v.United Telephone</u>

<u>Co. of Kansas, Inc.</u>, 683 F.2d 339, 343 (10th Cir. 1982) (citing <u>Grant v. Bethlehem Steel</u>

<u>Corp.</u>, 622 F.2d 43, 46 (2nd Cir. 1980) and <u>Womack v. Munson</u>, 619 F.2d 1292, 1296 (8th

Cir. 1980), *cert. denied*, 450 U.S. 979 (1981)) (A causal connection may be demonstrated

7

by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action).  See also Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir.1999) (A causal connection may be shown by direct evidence or by knowledge of the complaints on the part of the employer coupled with a closeness in time sufficient to create an inference of causation.)

Temporal proximity alone, however, in the absence of other evidence, is generally not sufficient to support a finding of causal connection. See Nguyen v. City of Cleveland, 229 F.3d 559 (6th Cir. 2000).  However, temporal proximity may establish a prima facie case if it is "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).  See also Hafford v. Seidner, 183 F.3d 506 (6th Cir. 1999) (absent additional evidence, two to five months insufficient to create an issue of causation); Cooper v. City of North Olmsted, 795 F.2d 1265 (6th Cir. 1986) (four months insufficient to support an inference of retaliation).

The relevant dates in this case are as follows: March 2003 (first EEOC charge); June 26, 2003 (second EEOC charge); September 9, 2003 (one half "funeral" point assigned which Plaintiff disputes); October 11, 2003 (one half "leaving early" point assigned which Plaintiff disputes); December 8, 2003 (third EEOC charge); December 28, 2003 (three "no show" points assigned which Plaintiff disputes); December 29, 2003 (one and one half "late call in" points assigned which Plaintiff disputes); December 30, 2003 (termination).  The June 26 and September 9 dates are two and one half months apart.  "Absent additional evidence" this time period is "insufficient to create an issue of causation."

8

Plaintiff contends that the court should look at the proximity of his third EEOC charge on December 8 and his termination on December 30. Plaintiff's reasoning is flawed. Defendant's retaliatory actions, if any, occurred on September 9 and/or October 11 when the disputed points were assigned. If those points were warranted, then Plaintiff would have accrued the requisite points for termination, regardless of his third EEOC charge.[13] Therefore, the court need not consider whether the period between December 8 and December 30 was close enough in time to establish a causal relation.

Plaintiff attempts to rely on attendance records of certain other employees as "additional evidence." Plaintiff contends that an employee named Douglas Jeter incurred 15.5 points but was not terminated. Plaintiff has submitted time punch records for Jeter which purport to show that Jeter and Plaintiff were treated differently for substantially similar conduct. Defendant has filed objections to these exhibits on various grounds, including lack of authentication, hearsay, and relevance.

The exhibits at issue were discovered by Plaintiff under a tree in a churchyard, after Plaintiff allegedly received an anonymous telephone call. Defendant's Objection at p. 1. The term "audit suppressed" on the documents means that any changes or updates made to the time punch records are not reflected on those documents. Id. Therefore, the documents cannot be determined to be accurate or complete.

---

[13] It is undisputed that Plaintiff should have received at least a point on December 27.

Moreover, Plaintiff cannot personally authenticate the documents, nor has he presented anyone else to authenticate them. Plaintiff's Depo. at p. 192. The Federal Rules of Evidence require the authentication of business records by a custodian in order to qualify for the hearsay exception found in Rule 803(6). The custodian of the business records must testify that the records were "made at or near the time by, or from information transmitted by a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation." Fed. R. Evid. 803(6). Because these documents have not been authenticated and are not complete, the court will not consider them in deciding this motion.

Furthermore, Defendant has presented evidence that the records and Plaintiff's interpretation of those records are not proper comparators. Defendant's evidence shows that employees who did not file EEOC charges were terminated under its attendance policy. Darnall Declaration with attachments, Exhibit U to Defendant's Reply. Additionally, the employees pointed to by Plaintiff either did not work at the Brownsville facility and, therefore, were not governed by the same attendance policy or they did not work the same shift as Plaintiff. Id. Also, Plaintiff has assigned "lunch punch" points to Jeter in arriving at the total number of points that Plaintiff contends Jeter should have had. Plaintiff's Response at p. 13. However, neither Plaintiff nor Jeter were assigned "lunch punch" points, even though this was allowable under the attendance policy. Defendant's Memorandum, Exhibit N; Defendant's Reply, Exhibit U. Thus, Plaintiff cannot rely on these records as

10

"additional evidence" to establish a causal connection.

However, even if the court did consider the records of Douglas Jeter, there is no evidence that any difference in treatment between Jeter and Plaintiff was the result of retaliation against Plaintiff. To the contrary, Plaintiff testified in his deposition that Jeter received preferential treatment because Jeter was a friend of Doug Thompson. Plaintiff's Depo. at p. 194. See Goostree v. Tennessee, 796 F.2d 854, 862 (6th Cir.1986) (distinguishing "between a hiring process that proceeds based on legally impermissible distinctions ... and a patronage system that relies on family, friends, and political allies") (quotations omitted). Accord Brandt v. Shop'n Save Warehouse Foods, Inc., 108 F.3d 935, 938-39 (8th 1997) (although a job may have been created and person hired based on friendship, rather than qualifications, this did not raise an inference that the decision was motivated by gender discrimination); Autry v. North Carolina Dep't of Human Resources, 820 F.2d 1384, 1385 (4th Cir. 1987) (race discrimination case not made by showing that friendship or politics may have entered into promotion decision); Clement v. Madigan, 820 F. Supp. 1039, 1046-47 & n. 10 (W.D. Mich.1992) (evidence of nepotism does not raise inference of pretext or racial discrimination).

Neither does Plaintiff's "perception" that his supervisor's attitude toward him changed after he filed his EEOC charges establish a causal connection because Plaintiff has failed to present evidence that his supervisor had knowledge of the filing of the EEOC charges. Plaintiff's Depo. at p. 96 (Q. "You don't know if he [Doug Thompson] knew or

11

not, do you?" A. "No."); Thompson Depo. at p. 13.  See <u>Allen v. Mich. Dep't of Corr.</u>, 165 F.3d 405, 412 (6th Cir.1999); <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 386-87 & n. 3 (6th Cir.1999) (en banc) (stating general test for retaliation claims and noting that the test is often stated as "a four-prong test," treating the defendant's knowledge of the protected conduct as the fourth element).

Because Plaintiff has not shown a causal connection between his filing of the EEOC charges and the adverse action taken against him, he has not established a prima case of retaliation.   However, even if he had, Defendant has presented a legitimate, non-discriminatory reason for its actions, i.e., Plaintiff's accumulation of points, and Plaintiff has failed to show that the reason is pretextual.

Plaintiff contends that the assignment of one half point on September 9 was retaliatory because he did, in fact, attend his co-worker's funeral.   In support of this contention, Plaintiff has presented his own affidavit and that of his girlfriend, Paulette Jarrett, who states that she attended the funeral with Plaintiff.   In response, Defendant has pointed to the testimony of Alan Watts, <u>see</u> Watts Depo. at p. 55, and Paul Williams, <u>see</u> Williams Declaration. Watts and Williams state that they based their belief that Plaintiff did not attend the funeral on the fact that they did not see Plaintiff at the funeral.

In <u>Smith v. Chrysler Corp.</u>, 155 F.3d 799 (6th Cir. 1998), the Sixth Circuit addressed the standard a court should use when evaluating the factual basis for an employer's articulated reason for a challenged employment decision.   The court discussed the "honest

belief" approach used by the Seventh Circuit, which provides that "so long as the employer

honestly believed in the proffered reason given for its employment action, the employee

cannot establish pretext even if the employer's reason is ultimately found to be mistaken,

foolish, trivial, or baseless." Id. at 806 (citing Kariotis v. Navistar Int'l Transp. Corp., 131

F.3d 672, 676 (7th Cir.1997)). The court explained the reasoning behind this approach. "If

the employer honestly, albeit mistakenly, believes in the non-discriminatory reason it relied

upon in making its employment decision, then the employer arguably lacks the necessary

discriminatory intent." 155 F.3d at 806.

Although the Smith court declined to adopt the "honest belief" rule in its broadest

form ("To the extent the Seventh Circuit's application of the 'honest belief' rule credits an

employer's belief without requiring that it be reasonably based on particularized facts rather

than on ignorance and mythology, we reject its approach."), the court followed a variant of

the rule as articulated in Pesterfield v. TVA, 941 F.2d 437 (6th Cir. 1991). See Parker v. Key

Plastics, Inc., 68 F. Supp.2d 818 (E.D. Mich. 1999). The court explained its holding as

follows:

> Thus, according to Pesterfield, in order for an employer's proffered non-
> discriminatory basis for its employment action to be considered honestly held, the
> employer must be able to establish its reasonable reliance on the
> particularized facts that were before it at the time the decision was made. If
> the employer is unable to produce such evidence to support its employment
> action, then the "honest belief" rule does not apply. Even if the employer is
> able to make such a showing, the protection afforded by the rule is not
> automatic. As was noted in Pesterfield, once the employer is able to point to
> the particularized facts that motivated its decision, the employee has the
> opportunity to produce "proof to the contrary." 941 F.2d at 443. As one court

13

noted in a similar context, "if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so." <u>Fischbach v. District of Columbia Dept. of Corrections</u>, 86 F.3d 1180, 1183 (D.C. Cir.1996) (holding that the plaintiff failed to establish that the employer's proffered nondiscriminatory reason was pretextual).

**In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.** <u>Cf. Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981) (explaining that an employee establishes pretext "by showing that the employer's proffered explanation is unworthy of credence.") Although courts should resist attempting to micro-manage the process used by employers in making their employment decisions, neither should they blindly assume that an employer's description of its reasons is honest. When the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process "unworthy of credence," then any reliance placed by the employer in such a process cannot be said to be honestly held.

155 F.3d at 807-08 (emphasis added). In <u>Smith</u>, the court noted that the <u>Pesterfield</u> court had determined that "[t]he question is thus not whether TVA's decision that plaintiff was not employable due to his psychiatric condition was correct measured by 'objective' standards. What is relevant is that TVA, in fact, acted on its good faith belief about plaintiff's condition based on Dr. Paine's opinion, and, as the district court pointed out, there is no proof to the contrary." <u>Smith</u>, 155 F.3d at 808 (citing <u>Pesterfield</u>, 941 F.2d at 443).

Defendant has pointed to the particularized facts on which it based its decision to assess one half point against Plaintiff for not attending the funeral, i.e., the testimony of Watts and Williams. These facts are sufficiently detailed to support Defendant's reliance on

14

the "honest belief" rule.  Accordingly, the court must accept Defendant's honestly held belief that Plaintiff did not attend the funeral in question, even if the actual facts are otherwise, unless Plaintiff produces sufficient "proof to the contrary" to suggest that Defendant "failed to make a reasonably informed and considered decision."  Smith, 155 F.3d at 807.  Plaintiff has produced no such proof.  Thus, Plaintiff has failed to meet his burden of demonstrating that Defendant's reliance on those facts was unreasonable or was in any way connected to Plaintiff's filing of EEOC charges.

Even if Plaintiff had not been assigned one half point for attending the funeral on September 9 and one half point for leaving early on October 11, he would have accumulated enough points to be terminated in December while he was incarcerated.  Using Plaintiff's calculations, he should have accumulated seven points, instead of ten, on December 27.  However, it is undisputed that Plaintiff neither called in or reported to work on December 28 and did not call in or report to work within one hour of his shift on December 29.

Plaintiff has presented the affidavit of his girlfriend, Paulette Jarrett, who states that she talked to Alan Watts, the plant manager, on December 27, 2003, and told him that Plaintiff had been arrested.  She states that she was told that Plaintiff did not need to call in until he was released.  Although Jarrett "**understood** from his conversation that Evans would be receiving one absentee point each day for an absence with a prior call in," Jarrett Affidavit (emphasis added), Plaintiff has presented no evidence that Watts actually said that Plaintiff would receive only one point.   Conclusory allegations, speculation, and

15

unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 (1990); Trigano v. Bain & Co., Inc., 380 F.3d 22 (1st Cir. 2004) ("Trigano's speculation about what other Board members might have done is not evidence."); Booker v. City of St. Louis, 309 F.3d 464 (8th Cir. 2002) (Plaintiff "argues that the district court erred in granting summary judgment because there was a disputed issue of fact concerning whether his selection was random. The district court did not err. As the district court held, Booker's "belief" that he was singled out for testing is not evidence that he was.") Thus, Plaintiff has failed to refute Defendant's evidence that, even if he had only seven points on December 27, he would have received an additional three points on December 28, and one and one half points on December 29, which would have resulted in his termination.

Because Plaintiff has failed to point to facts which, if believed by the trier of fact, would show that Defendant's stated reason for discharging him was a pretext for unlawful retaliation, Defendant is entitled to summary judgment. Therefore, Defendant's motion for summary judgment is GRANTED. The clerk is directed to enter judgment accordingly. IT IS SO ORDERED.

JAMES D. TODD
UNITED STATES DISTRICT JUDGE

25 August 2005
DATE

16

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 36 in case 1:04-CV-01135 was distributed by fax, mail, or direct printing on August 29, 2005 to the parties listed.

---

Evans Sturdivant
106 Bunch St.
Brownsville, TN 38012

Michael L. Weinman
WEINMAN & ASSOCIATES
114 S. Liberty St.
Jackson, TN 38302

N. Victoria Holladay
FORD & HARRISON, LLP
795 Ridge Lake Blvd.
Ste. 300
Memphis, TN 38138--137

Honorable James Todd
US DISTRICT COURT